IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 7, 2011

## LUE HOLCOMB v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court of Shelby County**

**No. 09-04878     J. Robert Carter, Judge**

**No. W2010-02458-CCA-R3-PC  - Filed November 9, 2011**

The Petitioner filed for post-conviction relief alleging (1) that he received ineffective assistance of counsel in conjunction with his guilty plea to aggravated assault; and (2) that his plea was not voluntary as constitutionally required.  After an evidentiary hearing, the post-conviction court denied relief, and the Petitioner has appealed.  After a thorough review of the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment
of the Criminal Court Affirmed**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and ALAN E. GLENN, JJ., joined.

Jennifer D. Fitzgerald, Memphis, Tennessee, for the appellant, Lue Holcomb.

Robert E. Cooper, Jr., Attorney General & Reporter; Sophia S. Lee, Assistant Attorney General; William L. Gibbons, District Attorney General; Marlinee Iverson, Assistant District Attorney General; for the appellee, State of Tennessee.

## OPINION

### Factual and Procedural Background

*Preliminary Proceedings*

Lue Holcomb ("the Petitioner") was indicted in August 2009 on one count of aggravated assault and one count of violation of protective order arising from a March 2009 altercation with Petrina Green, the mother of his son.  Approximately one month later, Green

testified at the Petitioner's bond hearing that she wanted the charge dismissed because she had falsely accused the Petitioner of "putting his hands on" her when it was "just basically . . . a verbal dispute."[1]

She explained that, on the day she had the Petitioner arrested, she was upset because the Petitioner's mother had gained custody of their son. Green "had been drinking" and told the police "things . . . that weren't exactly true." She testified that the Petitioner had not struck her. On cross-examination, Green acknowledged that both her son and her nephew had witnessed the altercation between her and the Petitioner and that they both spoke to the police. The trial judge questioned Green during the bond hearing, learning that she had obtained an order of protection against the Petitioner and that he had earlier been convicted of two separate domestic assaults against her.

The Petitioner also testified at his bond hearing, answering affirmatively that he had been diagnosed with a "mental condition" and was taking medication. In response to questions by the trial court, he stated that he was unable to make bond even if it was lowered. At that point, the trial judge stated, "Then we're wasting our time, then," and asked, "What are we having this hearing for?" The Petitioner responded,

> That's on my attorney. I was trying to get it – when I know I didn't do nothing, I was trying to see if I could get the charges dismissed off this.
> . . .
> I can't make your bond and that is why I thought that the hearing was for today, because the consent form was signed [by Green] and the charges were going to be uplifted off of me. That's what I was thinking that this was for, sir.

After the trial court explained that it did not have the authority to dismiss the charges on the Petitioner's request at the bond hearing, the Petitioner's lawyer stated, "With that being the posture of [the Petitioner,] Your Honor, I would like to withdraw our motion for bond hearing and enter an order for a mental evaluation and once we get a report on that, we'll get a trial date."

In response to this request, the Petitioner asked for a different attorney. The Petitioner stated, "I've already been through this, though, Your Honor, and I was just trying to get out of jail. That's all. And I can't make bond on a $40,000.00 bond on something that I didn't do, Your Honor. I'm competent. I'm very competent of what is going on." The trial court

---

[1] A transcript of the bond hearing was admitted as an exhibit to the post-conviction hearing.

granted the defense request for a mental evaluation and denied the Petitioner's request for a new lawyer.

*Guilty Plea*

On October 9, 2009, the Petitioner took a plea bargain consisting of a "best interest" guilty plea[2] to the aggravated assault charge with a sentence of six years on probation as a Range I offender. The violation of protective order charge was dropped. At the plea hearing,[3] the prosecutor stated that "[t]he State would have, at trial, put on the victim, Katrina[4] Green, to say on 3/30/09 [the Petitioner] came to the home and assaulted her causing serious bodily injury, this aggravated assault." The defense attorney stipulated, "that would [have] been the State's case had we gone to trial."

During the plea colloquy between the Petitioner and the trial court, the trial court established that the Petitioner had reviewed his written plea document with his lawyer and that he understood it; that he understood his rights to a jury trial, to confront the witnesses against him, to remain silent, and to counsel at trial and on appeal; that he understood his plea would "end the matter except for [his] being on probation"; the potential sentence if a jury convicted him; the terms of the plea bargain; the potential result if he violated his probation; and that he was entering the plea of his "own free will."

After the trial court determined that the Petitioner had "made a knowing, intelligent and voluntary decision to plead guilty and to waive his rights to trial by jury" and had accepted the Petitioner's plea, the Petitioner stated, "I just want for the record I was entering this Alfred [sic] plea because it was the best interest for me to do it even though Brady material[5] was withheld by the State on these cases." The trial court inquired further, and the

---

[2] See North Carolina v. Alford, 400 U.S. 25, 37-38 (1970) (holding that, where the prosecution demonstrated a strong factual basis for the defendant's guilt, the trial court committed no constitutional error in accepting guilty plea from the defendant who, while protesting his innocence, deemed the plea to be in his best interest).

[3] A transcript of the plea hearing was admitted as an exhibit to the post-conviction hearing.

[4] The first name of the victim appears to have been either misspoken by the prosecutor or misspelled by the court reporter.

[5] In Brady v. Maryland, 373 U.S. 83, 87 (1963), the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

(continued...)

Petitioner claimed that the victim had given a "sworn statement" to the prosecutor. The trial court asked the Petitioner if he wanted to retract his plea, advising the Petitioner that the trial court would "order the State to give [the statement] to [him] and [he] can go to trial." The Petitioner stated repeatedly that he did not want to go to trial and wanted to enter his guilty plea. The trial court accepted the plea and entered a judgment of conviction for aggravated assault with a sentence of six years, suspended to supervised probation. The Petitioner's probation was revoked on April 6, 2010.[6] The Petitioner filed his petition for post-conviction relief on May 18, 2010.

*Proof at Post-Conviction Hearing*

At his post-conviction hearing, the Petitioner testified that, after the bond hearing, he anticipated going to trial and obtaining a favorable verdict based on Green's recantation. He stated that his lawyer ("trial counsel") visited him only once in jail, but acknowledged that he saw her in court and that she had mailed him a "discovery package." He also stated that he had filed a complaint against trial counsel with the Board of Professional Responsibility because she had filed a motion for a bond hearing instead of a motion for dismissal based on Green's recantation.

The Petitioner testified that a mental evaluation was conducted, but trial counsel did not discuss the results with him. He also testified that trial counsel advised him to take the plea bargain because he risked a longer sentence if he went to trial and lost. When asked why he filed his petition for post-conviction relief, the Petitioner responded, "Because I feel that I was induced into signing for this guilty plea instead of going to – I just don't feel I should have been charged with aggravated assault. . . . [M]y charge didn't deserve aggravated assault because it wasn't aggravated assault."

On cross-examination, the Petitioner stated that Green had told him that, prior to the bond hearing, she had gone to the prosecutor's office "and signed a sworn statement saying that she . . . was exonerating me of these charges." The Petitioner did not have a copy of the statement, however, stating that trial counsel had told him that she "couldn't obtain that for me." On questioning by the judge, the Petitioner acknowledged that he had never seen a written statement but had the "impression" that Green's verbal recantation to the prosecutor had been typed and signed by Green. The Petitioner also acknowledged to the judge that he

---

[5](...continued)

[6] According to the Petitioner's brief, he was arrested in December 2009 for domestic assault, to which he pled guilty. This offense formed the basis of the State's petition to revoke the Petitioner's probation.

knew about Green's statement prior to pleading guilty. He stated that he pled guilty because trial counsel was not representing his best interests. He also testified that he contacted a lawyer to file a post-conviction petition shortly after entering his plea, but he ran out of money to pay for his representation before the petition could be filed.

Trial counsel testified that the Petitioner called her "on a daily basis" but that she would have to consult her phone logs to state specifically the number of times she spoke with him over the phone. She explained to the Petitioner that she "didn't have the authority to dismiss charges or have charges dismissed, that it was – whether or not a case is prosecuted remains in the Prosecutor's discretion." She testified that she wrote the Petitioner a detailed letter in August 2009, including a plea bargain offer from the State of six years in confinement. The State revised its offer to six years on probation on October 5, 2009, and she advised the Petitioner of the revised offer the same day. She explained to him that his prior convictions established him as a Range II offender, and the offer from the State allowed him to be sentenced as a Range I offender. She also explained to him that day that his mental evaluation had established that he was competent.

Some time between October 5 and October 9, the Petitioner contacted trial counsel and she then had the guilty plea paperwork prepared. She took it to the jail where she met with the Petitioner and explained the process and the plea.

Trial counsel never saw a written statement by Green although she was allowed to review the State's file. On questioning by the trial judge, trial counsel testified that she had explained to the Petitioner that the State could proceed with its prosecution in spite of Green's recantation, but the Petitioner resisted the notion that the State could proceed against him when the alleged victim had stated repeatedly that she did not want him prosecuted.

The post-conviction court took the matter under advisement and subsequently issued a comprehensive written order denying relief. The court stated succinctly the Petitioner's real complaint: "He blames his attorney for failing to get the case dismissed." The court also noted that, although the Petitioner had testified at his post-conviction hearing that he began to investigate his options for post-conviction relief immediately after pleading guilty, the Petitioner did not actually file his petition until after his probation had been revoked and he was placed in custody. The court reviewed the transcript of the plea hearing and determined that the plea had been entered knowingly and voluntarily and in compliance with the constitutional mandates of Boykin v. Alabama, 395 U.S. 238, 242-44 (1969). The post-conviction court noted that "it is clear that this is a case of 'change of mind'" rather than an unknowing or involuntary plea. The post-conviction court also determined that the Petitioner "had the benefit of effective trial counsel."

## Analysis

*Standard of Review*

Relief pursuant to a post-conviction proceeding is available only where the petitioner demonstrates that his or her "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2006). To prevail on a post-conviction claim of a constitutional violation, the petitioner must prove his or her allegations of fact by "clear and convincing evidence." Tenn. Code Ann. § 40-30-110(f) (2006). See Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). This Court will not overturn a post-conviction court's findings of fact unless the preponderance of the evidence is otherwise. Pylant v. State, 263 S.W.3d 854, 867 (Tenn. 2008); Sexton v. State, 151 S.W.3d 525, 531 (Tenn. Crim. App. 2004). We will defer to the post-conviction court's findings with respect to the witnesses' credibility, the weight and value of their testimony, and the resolution of factual issues presented by the evidence. Momon, 18 S.W.3d at 156. With respect to issues raising mixed questions of law and fact, however, including claims of ineffective assistance of counsel and challenges to the validity of a guilty plea, our review is de novo with no presumption of correctness. See Pylant, 263 S.W.3d at 867-68; Jaco v. State, 120 S.W.3d 828, 830-31 (Tenn. 2003); Sexton, 151 S.W.3d at 531.

*Ineffective Assistance of Counsel*

The Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel at trial.[7] Both the United States Supreme Court and the Tennessee Supreme Court have recognized that this right is to "reasonably effective" assistance, which is assistance that falls "within the range of competence demanded of attorneys in criminal cases." Strickland v. Washington, 466 U.S. 668, 687 (1984); see also Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). The deprivation of effective assistance of counsel at trial presents a claim cognizable under Tennessee's Post-Conviction Procedure Act. See Tenn. Code Ann. § 40-30-103; Pylant, 263 S.W.3d at 868.

In order to prevail on a claim of ineffective assistance of counsel, the petitioner must establish two prongs: (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. See Strickland, 466 U.S. at 687; Goad v. State, 938

---

[7] The Sixth Amendment right to counsel is applicable to the States through the Fourteenth Amendment to the United States Constitution. See Gideon v. Wainwright, 372 U.S. 335, 342 (1963); State v. Howell, 868 S.W.2d 238, 251 (Tenn. 1993).

S.W.2d 363, 370 (Tenn. 1996). The petitioner's failure to establish either prong is fatal to his or her claim of ineffective assistance of counsel. Goad, 938 S.W.2d at 370. Accordingly, if we determine that either prong is not satisfied, we need not consider the other prong. Id.

To establish the first prong of deficient performance, the petitioner must demonstrate that his lawyer's "acts or omissions were so serious as to fall below an objective standard of 'reasonableness under prevailing professional norms.'" Vaughn v. State, 202 S.W.3d 106, 116 (Tenn. 2006) (quoting Strickland, 466 U.S. at 688)). Our Supreme Court has explained that:

> [T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence. Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations.

Baxter, 523 S.W.2d at 934-35 (quoting Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974)). When a court reviews a lawyer's performance, it "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." Howell v. State, 185 S.W.3d 319, 326 (Tenn. 2006) (citing Strickland, 466 U.S. at 689). Additionally, a reviewing court "must be highly deferential and 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" State v. Honeycutt, 54 S.W.3d 762, 767 (Tenn. 2001) (quoting Strickland, 466 U.S. at 689). We will not deem counsel to have been ineffective merely because a different strategy or procedure might have produced a more favorable result. Rhoden v. State, 816 S.W.2d 56, 60 (Tenn. Crim. App. 1991). We recognize, however, that "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992) (citing Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982)).

As to the prejudice prong, the petitioner must establish a "reasonable probability that but for counsel's errors the result of the proceeding would have been different." Vaughn, 202 S.W.3d at 116 (citing Strickland, 466 U.S. at 694). In the context of a guilty plea, our analysis of this prong

> focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the

"prejudice" requirement, the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

Hill v. Lockhart, 474 U.S. 52, 59 (1985). See also Calvert v. State, 342 S.W.3d 477, 486 (Tenn. 2011).

*The Petitioner's Allegations of Ineffective Assistance*

In his brief before this Court, the Petitioner declares that his "main contention for ineffective assistance of counsel [is] . . . that [trial counsel] did not provide him with an exculpatory written statement which the victim, Ms. Green had given to the State which would have exonerated the [Petitioner]." This claim is without merit. The Petitioner has adduced no proof that such a written statement was ever created. Indeed, the Petitioner even admits that he simply had the impression that a written statement had been prepared after Green's oral recantation. A lawyer cannot be deficient for failing to provide a defendant with a document that does not exist. Cf. Pylant, 263 S.W.3d at 869 ("To succeed on a claim of ineffective assistance of counsel for failure to call a witness at trial, a post-conviction petitioner should present that witness at the post-conviction hearing.") (citing Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990)). Trial counsel did not perform deficiently in this regard.

Moreover, while the record establishes that Green made oral statements in which she claimed that the Petitioner had not assaulted her, the Petitioner was fully aware of these statements prior to entering his guilty plea. When he claimed in his plea hearing that the State had withheld Green's written statement, the Petitioner persisted in his plea even after the trial court told him that it would order the State to produce the alleged document. We agree with the State that this evidence strongly refutes the Petitioner's claim that, had trial counsel provided him with the statement, he would not have pled guilty and insisted on a trial. The Petitioner is entitled to no relief on this basis.

The Petitioner also alleges that trial counsel failed to communicate with him sufficiently, pointing to a single personal visit in jail in support of this allegation. However, the record establishes that trial counsel communicated with the Petitioner by phone, by letter, and by visiting him in court as well as in jail. The Petitioner has not demonstrated that trial counsel failed to communicate to him information relevant or necessary to his defense. This allegation is without merit.

The Petitioner also complains about trial counsel's representation of him at the bond hearing. During the post-conviction hearing, the Petitioner testified that, after trial counsel filed a motion for a bond hearing,

> instead of her asking the Judge to lower my bond, she asked the Judge to give me a mental evaluation, and I couldn't understand why would she ask the Judge to give me a mental evaluation after she had just put the victim on the stand exonerating me of these charges.

The transcript of the bond hearing establishes, however, that it was only after the Petitioner told the trial court that he could not make bond even if it was lowered, that he suffered from a "mental condition," and that what he wanted from the hearing was a dismissal of his charges, that trial counsel requested a mental evaluation. The Petitioner has failed to establish that trial counsel's efforts on his behalf at the bond hearing were deficient in any way.

Having failed to establish by clear and convincing evidence that trial counsel's performance was deficient, the Petitioner is not entitled to post-conviction relief on the basis of ineffective assistance of counsel.

*Validity of Guilty Plea*

The Petitioner also asserts that his plea is constitutionally infirm. Although his brief does not focus on this argument, the Petitioner complains that he was "forced, or coerced into the guilty plea because otherwise he would have to remain in jail while awaiting trial." The Petitioner points to trial counsel's failure to get his bond lowered at the bond hearing, requesting instead that a mental evaluation be ordered. We agree with the post-conviction court that the Petitioner has failed to demonstrate by clear and convincing evidence that his guilty plea did not pass constitutional muster.

To be valid, a guilty plea must be entered knowingly, voluntarily, and intelligently. See Boykin, 395 U.S. at 242-44; State v. Mackey, 553 S.W.2d 337, 340 (Tenn. 1977). A plea meets constitutional muster when the defendant understands both what the plea connotes and its consequences, Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (citing Boykin, 395 U.S. at 244), and makes a voluntary and intelligent choice from the alternative courses of action available to plead guilty. Jaco, 120 S.W.3d at 831 (citing North Carolina v. Alford, 400 U.S. 25, 31 (1970)). In Mackey, 553 S.W.2d at 341, our Supreme Court set forth the procedure that a trial court should follow when accepting a guilty plea in order to ensure that a defendant's plea is knowing, voluntary, and intelligent. See also Tenn. R. Crim. P. 11(b).

A trial court must "substantially comply" with this procedure. <u>State v. Newsome</u>, 778 S.W.2d 34, 38 (Tenn. 1989).

When conducting a guilty plea colloquy, a trial court is required by Tennessee law to, among other things, inform the defendant that the conviction may be used to enhance the punishment for subsequent convictions. <u>State v. McClintock</u>, 732 S.W.2d 268, 273 (Tenn. 1987). Our review of the transcript of the guilty plea hearing indicates that the trial court omitted this particular piece of information. This omission is not, however, a constitutional violation and so is not cognizable in a post-conviction proceeding. <u>See</u> <u>State v. Neal</u>, 810 S.W.2d 131, 137, 138 (Tenn. 1991), <u>overruled in part on other grounds by</u> <u>Blankenship</u>, 858 S.W.2d at 902; <u>Rocky Hipps v. State</u>, No. 03C01-9807-CC-00237, 1999 WL 782473, at *3 (Tenn. Crim. App. Sept. 28, 1999); <u>see also</u> <u>Rigger v. State</u>, 341 S.W.3d 299, 308 (Tenn. Crim. App. 2010). Accordingly, the Petitioner is not entitled to post-conviction relief on this basis.

As to the Petitioner's contention that he was "coerced" into pleading guilty in order to get out of jail because trial counsel failed to get his bond lowered, the record establishes that the Petitioner told the trial court at the bond hearing that he could not make bond even if it was lowered. Trial counsel is not responsible for the Petitioner's inability to make bond, and the record refutes the Petitioner's contention that he was coerced into pleading guilty as a result of the bond hearing or otherwise. The Petitioner is entitled to no relief on this basis.

## **Conclusion**

The Petitioner has failed to prove by clear and convincing evidence that his guilty plea was entered as the result of ineffective assistance of counsel or that it is constitutionally infirm. We therefore affirm the judgment of the post-conviction court denying relief.

_____
JEFFREY S. BIVINS, JUDGE

-10-