# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs June 12, 2012

## CHARLTON GARNER v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
No. 05-07903     J. Robert Carter, Jr., Judge

No. W2011-01861-CCA-R3-PC   -   Filed June 25, 2012

A Shelby County jury convicted petitioner, Charlton Garner, of second degree murder, attempted second degree murder, and reckless endangerment. The trial court sentenced him to an effective twenty-eight years in the Tennessee Department of Correction. After an unsuccessful direct appeal to this court, he petitioned the Shelby County Criminal Court for post-conviction relief, alleging ineffective assistance of counsel for failure to present a witness suggested by petitioner and failure to impeach a State's witness with prior convictions. Following an evidentiary hearing, the post-conviction court denied relief. Discerning no error in the proceedings, we affirm the judgment of the post-conviction court.

**Tenn R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and JEFFREY S. BIVINS, JJ., joined.

R. Todd Mosley, Memphis, Tennessee, for the appellant, Charlton Garner.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Senior Counsel; Amy P. Weirich, District Attorney General; and Betsy Weintraub, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Facts

#### A. Procedural History

In 2005, a Shelby County Grand Jury indicted petitioner for one count of first degree murder, one count of attempted first degree murder, and one count of aggravated assault. A

jury convicted him of the lesser-included offenses of second degree murder, attempted second degree murder, and reckless endangerment. He received an effective twenty-eight-year sentence in the Tennessee Department of Correction. This court affirmed the judgments of the trial court, and our supreme court denied discretionary review. *State v. Charlton Garner*, No. W2007-00821-CCA-R3-CD, 2009 WL 1819243 (Tenn. Crim. App. June 26, 2009), *perm. app. denied* (Tenn. Nov. 23, 2009). Petitioner filed a timely petition for post-conviction relief on October 14, 2010, and amended petitions on December 13, 2010, and July 20, 2011, raising double jeopardy claims and multiple instances of ineffective assistance of counsel. The post-conviction court denied relief on August 18, 2011. This appeal follows.

## B. Trial

On direct appeal, this court summarized the facts presented at trial as follows:

During the course of an evening, the defendant was involved in two separate shooting incidents which resulted in the charges against him. April Taylor, the victim of the reckless endangerment, testified during the jury trial that, on the evening in question, she and her cousin, Terrell Taylor, the victim of the murder conviction, were riding in her white sports utility vehicle (SUV). According to Ms. Taylor, she was taking her cousin to sell drugs in the Byfield area. As they proceeded down the street, they encountered the defendant and two friends on bicycles. According to Ms. Taylor, she was unable to turn her vehicle around because the group was blocking the road. Her cousin rolled down his window and spoke to the men, stating, "[D]on't you see she is trying to get her truck through," and then rolled the window back up. Immediately thereafter, the defendant fired a shot at the passenger side of the SUV. They left the area, and Ms. Taylor dropped off her cousin and his friend, Freddie Bachus, the victim of the attempted murder charge, in the neighborhood.

Mr. Bachus testified that he and Mr. Taylor went riding around in his car. As the two came to a stop sign at Hillbrook and Maxwell, they were approached by three males on bicycles. According to Mr. Bachus, without any words being spoken, the defendant aimed a gun at him and fired one shot into the car. The bullet first struck Mr. Bachus in the back of the head and then hit Mr. Taylor in the left temple. Fearing for his safety, Mr. Bachus then left the area and drove to the fire station on Horn Lake Road. The two men were later transported to The Med, where Mr. Taylor died.

The defendant was indicted by a Shelby County grand jury for first degree murder, attempted first degree murder, and aggravated assault. At the subsequent jury trial, the defendant acknowledged that he had committed the alleged acts but defended himself upon grounds of self-defense. In addition to the testimony of April Taylor and Freddie Bachus, the State also presented the testimony of Leroy Williams. Williams was one of the other men with the defendant on the night of the shootings. According to Williams, he, the defendant, and a third friend, were on Byfield when a white SUV came down the street. He testified that the passenger in the SUV ordered them to get out of the street, and confrontation words were exchanged. He stated that Mr. Taylor stuck his head out the window, and Williams thought he was going to shoot them. It was only afterward that the defendant fired the shot at the SUV. Williams went on to testify that the group proceeded to the Maxwell area where they were approached by a car that almost hit the defendant. According to Williams, Freddie Bachus accused the defendant of shooting at his friends, and more words were exchanged. Williams testified that he heard the passenger in the car scream "[s]hoot that [man]." He also testified that he saw shadows in the car bend down as if to get a weapon. It was then that the defendant fired into the car. The defendant also testified in his own defense. He acknowledged his commission of the acts but insisted they were done in self-defense. He testified that he had only committed the acts because he was frightened and that he had seen guns in the possession of both Mr. Taylor and Mr. Bachus.

*Charlton Garner*, 2009 WL 1819243, at *1.

## C. Post-Conviction Hearing

The post-conviction court conducted a hearing on the petition for relief. Petitioner testified that two attorneys represented him at trial. His family retained one of the attorneys around the time of his arraignment. Petitioner did not meet with the other attorney until the day of trial and did not recall the second attorney having any involvement in the trial itself. Petitioner first testified that trial counsel met with him for the first time after he had been indicted and arraigned; however, on cross-examination, he admitted that trial counsel met with him approximately four times before the arraignment date.

After arraignment, petitioner and trial counsel met in the attorney meeting room in the courthouse. Trial counsel reviewed the facts of the offenses with petitioner and discussed the possibility of a self-defense argument. When they met again, petitioner asked trial counsel to look for several witnesses. Petitioner specifically asked trial counsel to interview

-3-

and subpoena Kyland Young and Leroy Williams. Petitioner gave trial counsel addresses and telephone numbers for these witnesses. Trial counsel found Mr. Williams but told petitioner that they did not need Mr. Young for trial purposes. He also informed petitioner that he was unable to locate some of the other witnesses petitioner requested.

Petitioner testified that between the first meetings and the trial date, he saw his attorney on various report dates in court, and counsel would assure petitioner he would come to visit. Trial counsel visited "every once in a while," but in petitioner's opinion, "it wasn't often to be working on a capital murder case." On cross-examination, petitioner testified that he met with trial counsel approximately ten times during the fourteen months before his trial date.

Petitioner said that he did not receive notice of any plea offers in his case, and the trial court did not set a plea deadline. Trial counsel allegedly informed him that there was no offer and that he was going to trial. On cross-examination, petitioner testified that trial counsel conveyed to him that the State offered to remove the death penalty from consideration and allow him to plead guilty to life in prison. He testified that he chose to reject the State's offer. Petitioner agreed that he made a good decision in declining the State's offer because the jury convicted him of second degree murder, rather than first degree, and the trial court sentenced him to twenty-eight years instead of "life."

Petitioner testified that between the last scheduled court date and the day the trial began, trial counsel did not meet with him, even though petitioner said that he needed to discuss some issues prior to trial. During his testimony, petitioner equivocated, testifying that it was "[p]robably a day, or a few weeks" between his last meeting with trial counsel and the day of the trial; he again changed his statement to reflect that trial counsel visited with him "[p]robably about four days before" trial. At that meeting, they discussed a self-defense argument. Petitioner was not specific about the details of the conversation regarding self-defense. He testified that they did not discuss any strategies by which to argue lesser-included offenses. Petitioner wanted the jury to consider lesser offenses, not just self-defense. He testified, "[Trial counsel] should have said something about lesser-included offense[s], like manslaughter. I don't know that much about the law, but you don't get no [sic] self-defense unless somebody breaks in your house." He agreed that, even though trial counsel did not argue lesser-included offenses to the jury, it still convicted him of second degree murder as a lesser-included offense of first degree murder. Petitioner testified on redirect that he wanted his attorney to argue all offenses less than second degree murder, but not second degree murder itself.

Petitioner testified that trial counsel did not properly prepare for his case. To his knowledge, trial counsel did not utilize an investigator. He felt that the circumstances of

"how the crime went down and the gun fired" needed to be investigated. Petitioner did not believe that counsel questioned residents in the neighborhood in which the crimes occurred. On the day of trial, Leroy Williams was not present. Trial counsel explained to petitioner that he could not locate Mr. Williams. Petitioner was adamant that Mr. Williams needed to testify, so he contacted his mother and asked her to locate him. Trial counsel subsequently subpoenaed Mr. Williams. Petitioner was unsure whether his attorney subpoenaed Kyland Young.

Petitioner recalled that Leroy Williams testified for the State at trial. Mr. Williams was a friend of petitioner's from junior high school. Petitioner felt that Mr. Williams could shed some light on the people in the vehicle who were threatening his life. Petitioner was satisfied with trial counsel's questioning of Mr. Williams. Petitioner recalled that Kyland Young was present but was not called as a witness. He felt that Mr. Young's testimony would have been as important as Mr. Williams's testimony. However, Mr. Williams did not testify about seeing the victim with a gun, and petitioner was unsure of whether Mr. Young would testify that he saw a gun. He simply thought that the jury should have heard Mr. Young's version of the events.

Petitioner said his trial counsel coerced him into testifying that he was a high school drop-out. Counsel allegedly told petitioner that the jury would be more lenient on him if it viewed him as "just an old country boy." According to petitioner, trial counsel "flat out" told him to testify falsely. Petitioner testified on his own behalf at trial, after being advised of the risks and making the decision jointly with trial counsel.

Petitioner thought that trial counsel should have presented character witnesses on his behalf. He testified that someone should have been able to speak for him because the mother of the deceased victim was able to testify at the sentencing hearing. He also thought that trial counsel should have objected more; petitioner believed that counsel did not argue about many points. Petitioner, in hindsight, felt that trial counsel's statement in closing argument that "there's nothing worse than being wrongly accused" backfired on him. He recalled that trial counsel argued self-defense in his closing argument but did not emphasize lesser-included offenses. He thought that trial counsel should have argued lesser-included offenses.

Petitioner testified that trial counsel failed to raise "double jeopardy" or "constitutional rights" at the sentencing hearing. At the motion for a new trial, trial counsel only argued sufficiency of the evidence. Petitioner also felt wronged because trial counsel did not object to consecutive sentencing. He thought that trial counsel failed him by not raising the point that petitioner was a first-time offender, as well as other mitigating factors.

Petitioner presented Kyland Young as a witness at the post-conviction hearing. Mr. Young testified that he was not necessarily a witness to the shooting but "saw a dude reaching for a gun" during the incident in question. He recounted the facts of the case, stating that he was one of the three bicyclists who were confronted by a group of people in an SUV. They were riding their bicycles to a store where Mr. Young could buy cigarettes. Petitioner wanted to stop on Fairfield Road, but Mr. Young did not think they should travel that way because the people who frequented the area were "nothing but trouble." While on Fairfield Road, the young men were accosted by people in a truck. A female was driving, and Mr. Young could see that she was accompanied by a male. The male lowered his window and cursed at the three young men. Mr. Young did not know the man who cursed them. In colorful language, the man told them to get their bicycles out of the street. At that point, Mr. Young informed petitioner that he was leaving the area. As Mr. Young was leaving, he heard gunshots from a distance.

Mr. Young rode his bicycle slowly, trying to calm down. He topped a hill, where he found petitioner and the other young man.[1] They were talking in the street. A vehicle driven by Freddie Bachus approached "like he didn't know how to drive" and bumped Mr. Young's ankle. Mr. Young first testified that Mr. Bachus's passenger was the same male who cursed them earlier, but upon further questioning, acknowledged that he was not sure if it was the same man. Mr. Bachus said something about "big daddy," and "you did something to my kin folk"; however, Mr. Young could not hear the words very well because he was trying to get out of the street. As he turned around, he saw Mr. Bachus's shoulders move as though he were reaching for a weapon. Mr. Young was approximately one foot away from the vehicle. When Mr. Young saw Mr. Bachus reach, he felt it was time to leave. He pedaled as fast as he could to get to his home. He heard shots fired but testified that he heard gunshots all of the time and was not sure where they originated.

Police visited Mr. Young the following evening. He testified that the police kept "cutting him off" and that they "wanted to hear what they wanted to hear . . . ." He tried to tell the truth and tell police that he saw Mr. Bachus reaching for a gun, but they said that their only concern was who fired the gun. The police took his statement and read it back to him because he could not read. He did not correct the police because they told him that if he did not tell the police what they needed to hear, they would charge him, as well. Mr. Young testified that he spoke with petitioner after the shooting. Petitioner confessed to Mr. Young that he shot the man in the car.

---

[1] While Mr. Young does not name the third individual, the trial record reflects that Mr. Young was referring to Leroy Williams.

Mr. Young never spoke with any defense attorneys about the case; no one representing petitioner asked to speak with him. Mr. Young talked to the prosecutors and told them the same version of the events. The State subpoenaed Mr. Young, and he was present at trial. However, neither party called him to testify. He testified at the post-conviction hearing that he would have said the same thing at trial, that his "story will never change," but he could not control what detectives wrote in their reports.

Petitioner presented trial counsel as a witness at the evidentiary hearing. At the time of the hearing, he had been practicing law for twenty-five years and had tried over two hundred cases, more than ten of which were first degree murder trials. He has also instructed other attorneys on trial techniques.

Trial counsel did not recall whether he was retained or appointed. If he had been retained but not paid in full, his representation of petitioner would not have been affected. Trial counsel did not recall whether he had an investigator assisting him with the case; however, because counsel lived in the area of the crime, he investigated the case himself. He and co-counsel visited the crime scene together in preparation for trial.

Counsel had represented defendants who wanted to testify but had criminal records. He would inform them that they had a right to testify but that the State would likely question them about their criminal convictions. He would tell them that the jury may not believe their testimony because of their prior criminal history.

Trial counsel, however, did not believe it was important to question a witness about prior criminal convictions and did not employ the practice. He understood that the State used the method to damage the credibility of witnesses. Trial counsel did not recall specifically why he did not attack Mr. Bachus's credibility at trial with his prior convictions, but generally there were numerous reasons he would not do so. If he felt that questioning the witness about prior convictions would not accomplish anything, he would not do it. He acknowledged that the Tennessee Pattern Jury Instructions included an instruction regarding impeachment of witnesses with their prior criminal history. On cross-examination, the State referred to the trial transcript and reminded trial counsel that Mr. Bachus testified that he was in jail at the time of trial for violation of probation on a drug-related conviction and for another unnamed offense. Considering Mr. Bachus's trial testimony along with the fact that he testified in jail clothing, trial counsel believed that impeaching him was "just a waste of time."

Trial counsel did not recall whether he spoke with Kyland Young while preparing for trial. He recalled receiving discovery from the State but did not recall whether it included Mr. Young's statement. Trial counsel stated that he tried to talk to as many witnesses as

possible before a trial but did not recall a reason why he would not have spoken with Mr. Young in this case. In preparing for trial, if a defendant gave him names of witnesses, whether he interviewed the witnesses depended on what his client said the witness would say. If trial counsel received a statement from a witness, either written by the witness or provided by the police, he relied on the statement as representing the subject matter of the witness's testimony. Trial counsel was shown Mr. Young's statement to the police. After reading the statement, trial counsel determined that the witness would not have been essential to the defense's case, which was primarily self-defense.

In focusing on self-defense in his closing arguments, trial counsel testified that he thought that an argument of self-defense and an argument for lesser-included offenses were mutually exclusive. In his words, "I don't think you can ride two horses." Based on the facts of the case, trial counsel still thought that the jury should have acquitted petitioner based on self-defense. Although second degree murder was not what he wanted, he thought it was the best he could do.

Trial counsel did not recall whether he filed a timely motion for a new trial in petitioner's case, and if he did, what issues he raised. He did not investigate a double jeopardy issue because he did not believe that the facts supported such an issue. In preparing a motion for new trial, counsel would generally review his notes and the notes of any other attorney who may have been with him. He would try to include all issues that could be raised to preserve the issues for appeal.

The State, in questioning trial counsel, told him that petitioner testified that counsel told him to lie. Counsel replied, "I don't care what you're getting ready to say, I never do that. So he's lying." He said that his law license was too important for him to instruct someone to lie on the stand. Trial counsel testified that he did everything within his power to represent petitioner to the best of his ability.

In rebuttal, the State called the trial prosecutor. At the time of the evidentiary hearing, she had practiced law for twenty-eight years and had participated in over three hundred trials. The prosecutor reviewed Mr. Young's statements to the police and to the district attorney general's office. She did not consider the statements to be exculpatory because neither statement indicated petitioner was not the shooter or that there was a justifiable reason for the shooting. She testified that in a given case, if two witnesses could testify about the crime, and one was more articulate than the other, she would call the more articulate witness to testify. The prosecutor's policy regarding discovery was generally "open file." However, she did not always release witness statements prior to trial if they were not exculpatory in nature. Her case file bore a notation that she provided discovery to trial counsel.

II. Analysis

Petitioner pursues two claims of ineffective assistance of counsel: whether trial counsel was ineffective for failing to call Kyland Young as a witness at trial and whether trial counsel was ineffective for failing to impeach a State's witness.

A. Standard of Review

A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2010); *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010) (citing *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009)). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Lane*, 316 S.W.3d at 562 (quoting *Grindstaff*, 297 S.W.3d at 216).

Appellate courts do not reassess the trial court's determination of the credibility of witnesses. *Dellinger v. State*, 279 S.W.3d 282, 292 (Tenn. 2009) (citing *R.D.S. v. State*, 245 S.W.3d 356, 362 (Tenn. 2008)). Questions regarding the credibility of witnesses is a matter entrusted to the trial judge as the trier of fact. *Dellinger*, 279 S.W.3d at 292 (citing *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). The post-conviction court's findings of fact carry the weight of a jury verdict and are conclusive on appeal unless the preponderance of the evidence is otherwise. *Rigger v. State*, 341 S.W.3d 299, 307 (Tenn. Crim. App. 2010) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997)); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997)). However, conclusions of law receive no presumption of correctness on appeal. *Rigger*, 341 S.W.3d at 306 (citing *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001)). As a mixed question of law and fact, this court's review of petitioner's ineffective assistance of counsel claims is de novo with no presumption of correctness. *Dellinger*, 279 S.W.3d at 294 (citing *Finch v. State*, 226 S.W.3d 307, 315 (Tenn. 2007)).

To prevail on his claim of ineffective assistance of counsel, petitioner must demonstrate both that his lawyer's performance was deficient and that the deficiency prejudiced the defense. *Finch*, 226 S.W.3d at 315; *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). To prove that counsel's performance was deficient, petitioner must establish that his attorney's conduct fell below an objective standard of "reasonableness under prevailing professional norms." *Finch*, 226 S.W.3d at 315 (quoting *Strickland*, 466 U.S. at 688). As our supreme court has previously held:

'[T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is

a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence . . . Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations.'

*Baxter*, 523 S.W.2d at 934-35 (quoting *Beasley v. United States*, 491 F.2d 687, 696 (6th Cir. 1974)). On appellate review of trial counsel's performance, this court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689); s*ee Finch*, 226 S.W.3d at 316; *see also Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982) (noting that on appeal, counsel's conduct will not be measured by "20-20 hindsight"). The failure of trial counsel's strategy or tactic will not, standing alone, establish ineffective assistance of counsel. *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996). However, on appeal, this court will grant deference to strategic and tactical choices of counsel only if the choices are informed and based upon adequate preparation. *Id.* (citing *Hellard*, 629 S.W.2d at 9; *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App.1992)).

To establish that petitioner suffered prejudice as a result of counsel's deficient performance, petitioner "'must establish a reasonable probability that but for counsel's errors the result of the proceeding would have been different.'" *Finch*, 226 S.W.3d at 316 (quoting *Vaughn*, 202 S.W.3d at 116). "A 'reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Vaughn*, 202 S.W.3d at 116 (quoting *Strickland*, 466 U.S. at 694); s*ee Finch*, 226 S.W.3d at 316. As such, petitioner must establish that his attorney's deficient performance was of such magnitude that he was deprived of a fair trial and the reliability of the outcome was called into question. *Vaughn*, 202 S.W.3d at 116 (citing *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999)).

Petitioner must establish both deficient performance and prejudice therefrom to be entitled to post-conviction relief. *Id.* (citing *Howell*, 185 S.W.3d at 326). It follows that if this court holds that either prong is not met, we are not compelled to consider the other prong. *Id.* (citing *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004)).

B.  Failure to Present Kyland Young as a Witness at Trial

Petitioner argues that his trial counsel was ineffective for failing to present Kyland Young as a witness at trial. Mr. Young testified at the post-conviction hearing regarding what he witnessed during the offenses committed by petitioner. Petitioner's primary complaint, established by his testimony at the post-conviction hearing, is simply that the jury

should have heard Mr. Young's recitation of the facts. Petitioner did not know if Mr. Young saw Mr. Bachus with a gun or would have testified that he saw a gun.

One of the witnesses petitioner requested that trial counsel subpoena to trial was Leroy Williams, who testified for the State. However, Mr. Williams testified fully regarding what he witnessed at the scenes of both confrontations and was thoroughly cross-examined by trial counsel. At trial, Mr. Williams told the jury that he heard Mr. Bachus's passenger, Terrell Taylor (the victim of the murder conviction), shout to Mr. Bachus to shoot at the men on the bicycles. He also testified that he saw "shadows in the car bend down as if to get a weapon."

In his brief, petitioner asserts that Mr. Young's testimony "was not beneficial for the State," thus, by implication, it would have been beneficial to petitioner's defense. The prosecutor's testimony contradicts his assertion. She testified that when she has two witnesses with similar testimony, and one is more articulate than the other, she calls the more articulate witness to testify at trial. The prosecutor's decision to call Mr. Williams as a witness rather than Mr. Young was based solely on their demeanor and communication skills, not on the value or importance of Mr. Williams's testimony over Mr. Young's.

Mr. Williams's testimony at trial was more in-depth than the testimony Mr. Young offered at the post-conviction hearing. Mr. Williams testified about a threat from Mr. Bachus's passenger while Mr. Young did not hear any threat come from Mr. Bachus's passenger. Mr. Young's testimony regarding seeing a figure bend down as if to retrieve a weapon was already before the jury and would have been cumulative to Mr. Williams's testimony. *See Howard Eugene Buchanan v. State*, No. M2003-01815-CCA-R3-PC, 2004 WL 1114589, at *6 (Tenn. Crim. App. May 19, 2004) (upholding denial of post-conviction relief where testimony of proffered witness was "largely cumulative" to testimony presented at trial).

Petitioner correctly cites *Plyant v. State*, 263 S.W.3d 854, 874 (Tenn. 2008), for the proposition that, under certain circumstances, failure of trial counsel to present a witness can result in ineffective assistance of counsel. However, *Plyant* involved trial counsel's failure to call a witness who made statements to other people incriminating herself in the murder of the victim. The facts of *Plyant* are easily distinguished from the instant case wherein counsel failed to present cumulative testimony. Petitioner also maintains that the post-conviction court erred because it did not make the necessary findings regarding Mr. Young's testimony pursuant to *Plyant.* The *Plyant* court held that "if the proffered testimony is both admissible and material, the post-conviction court must assess whether the witness is credible." *Plyant*, 263 S.W.3d at 869-70.

The post-conviction court summarized Mr. Young's testimony at the evidentiary hearing, ultimately finding that "[h]is testimony, that the police just wouldn't listen, is not credible." The court did not specifically make a finding of whether the testimony would have been admissible and material. However, a written finding on this issue is not necessary to comply with the mandate of *Plyant,* and the post-conviction court made satisfactory implicit findings. *Cf. Donald L. Seiber v. State*, No. E2010-00285-CCA-R3-PC, 2011 WL 1484173, at *5 (Tenn Crim. App. Apr. 19, 2011) (noting that, in *Plyant*, the supreme court "did not add to the post-conviction court's duties under [Tennessee Code Annotated] section 40-30-111 a requirement that the court make explicit written credibility findings" for every witness presented at the post-conviction hearing).

First, the post-conviction court actively ruled on whether certain witnesses would be appropriate or admissible in the arena of post-conviction proceedings, forbidding petitioner from presenting a proffered witness whose testimony would be inadmissible. By permitting Kyland Young to testify, the post-conviction court implicitly found that the testimony would have been admissible at trial.

Second, the trial court implicitly ruled that Mr. Young's testimony was not material to petitioner's defense, stating in its order:

> Even if [Mr. Young] had testified, he would have been impeached by two separate prior inconsistent statements. Even if true, his testimony would only repeat the claim made by Petitioner at the trial.

Thus, the post-conviction court found that Mr. Young's testimony was cumulative and would not have been material to petitioner's defense because it was impeachable.

Finally, although the post-conviction court was not required to make a credibility finding after implicitly finding that Mr. Young's testimony was admissible yet immaterial, the court found that Mr. Young's testimony was, indeed, not credible, writing, "Only now, at the Post-Conviction hearing, does the witness claim to see the victim pulling out a gun." The post-conviction court implicitly made the required findings, and ultimately found that Mr. Young's testimony was not credible. As noted above, questions regarding the credibility of witnesses is a matter entrusted to the trial judge as the trier of fact. *Dellinger*, 279 S.W.3d at 292 (citing *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). Based on the foregoing, the post-conviction court found that petitioner failed to carry his burden of proof on the issue of ineffective assistance of counsel for failing to call Mr. Young as a witness.

> If the post-conviction court determines that the proffered testimony would not have been admissible at trial or that, even if admissible, it would not have

materially aided the petitioner's defense at trial, the post-conviction court is justified in finding that trial counsel was not deficient in failing to call that witness at trial.

*Plyant,* 263 S.W.3d at 869. Petitioner has failed to demonstrate either deficient performance or prejudice accruing therefrom with respect to trial counsel's failure to call Mr. Young as a witness. Thus, this issue is without merit.

### C. Failure to Impeach a State's Witness with Prior Convictions

Petitioner argues that trial counsel was ineffective for failing to impeach the surviving victim, Freddie Bachus, with his prior criminal history. He asserts that if trial counsel had impeached Mr. Bachus with his four prior felony convictions, the trial court could have instructed the jury, pursuant to the Tennessee Pattern Jury Instructions, that it could use those convictions in assessing his credibility.

Trial counsel testified that he was aware that a witness could be impeached with prior criminal convictions but that he did not often choose to employ that tactic, opining that it rarely accomplished anything. The post-conviction court cited trial counsel's testimony and the trial transcript and found that Mr. Bachus, the surviving victim, testified while he was incarcerated. Therefore, he wore jail clothes at the trial. Mr. Bachus also admitted to the jury that he was involved in selling drugs. For those reasons, trial counsel did not believe it was necessary to impeach Mr. Bachus with prior convictions. The post-conviction court determined that trial counsel was not ineffective for failing to impeach Mr. Bachus with his prior convictions.

We agree that trial counsel could have impeached Mr. Bachus's testimony with proof of his prior criminal history, thereby justifying a jury instruction on impeaching the credibility of the witness with prior convictions. However, "[c]ounsel should not be deemed to have been ineffective merely because he failed to employ additional modes of impeachment which may or may not have produced a different result." *Raymon Haymon v. State*, No. W2005-01303-CCA-R3- PC, 2006 WL 2040434, at *10 (Tenn. Crim. App. July 10, 2006) (citing *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980)). Postulating about one more thing that trial counsel could have done does not mandate a finding that he did not perform effectively.

Moreover, petitioner has failed to demonstrate that he was prejudiced by counsel's failure to impeach the witness with his prior convictions. The jury saw the witness in jail clothes. It knew that he was in jail on a probation violation. The witness told the jury that the probation he violated was imposed pursuant to a drug-related conviction. The witness

-13-

further admitted that the probation violation was not the only reason he was incarcerated. The jury had knowledge of at least two instances of criminal activity and could assess the witness's credibility without the necessity of formal impeachment. The trial court properly instructed the jury, "Every fact and circumstance in the case you may consider in arriving at your verdict," and:

> You are the exclusive judges of the facts in this case. Also, you are the exclusive judges of the law under the direction of the court. You should apply the law to the facts in deciding this case. *You should consider all evidence in the light of your own observations and experience in life.*

(emphasis added). By the court's instructions, the jury was free to assess the credibility of the witnesses using "every fact and circumstance" and its "own observations and experience in life." The jury could have properly considered the witness's jail clothing, current incarceration, and admitted criminal convictions. The post-conviction court concluded that petitioner did not meet his burden of proving either deficient performance or prejudice at the evidentiary hearing and that "[t]his was simply a matter of a jury refusing to believe that the [p]etitioner acted in self-defense." We agree with the post-conviction court. Petitioner is not entitled to relief on the issue of trial counsel's failure to impeach Mr. Bachus with his criminal history.

### D. Claims Abandoned on Appeal

While petitioner raised double jeopardy claims and multiple claims of ineffective assistance of counsel in his petition, he acknowledged in his brief that he has waived or abandoned all issues with the exception of those addressed above. *See Ronnie Jackson, Jr. v. State*, No. W2008-02280-CCA-R3-PC, 2009 WL 3430151, at *6 n.2 (Tenn. Crim. App. Oct. 26, 2009) ("[w]hile the Petitioner raised additional issues in his petition for post-conviction relief, he has abandoned those issues on appeal"). Accordingly, those issues have not been addressed on appeal.

### III. Conclusion

Based on our review of the post-conviction proceedings, the briefs of the parties, and relevant case law, we affirm the judgment of the post-conviction court.

_____
ROGER A. PAGE, JUDGE