# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs December 11, 2012

## SHAWN SIMMONS v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Lincoln County**
**No. S1100100     Robert Crigler, Judge**

---

**No. M2012-00987-CCA-R3-PC - Filed March 27, 2013**

---

A Lincoln County jury convicted petitioner, Shawn Simmons, of first degree murder. After an unsuccessful direct appeal, petitioner filed a petition for post-conviction relief alleging that he received ineffective assistance of counsel. The post-conviction court denied relief, and petitioner now appeals. Upon review, we discern no error and affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE, JJ., joined.

Jonathan C. Brown, Fayetteville, Tennessee, for the appellant, Shawn Simmons.

Robert E. Cooper, Jr. Attorney General and Reporter; Rachel Harmon, Assistant Attorney General; Charles Frank Crawford, Jr., District Attorney General; and Ann L. Filer, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Procedural History and Facts

In our opinion on petitioner's direct appeal, this court summarized the facts underlying petitioner's conviction as follows:

> On February 3, 2008, a group of friends and relatives planned to gather at the home of Keith and Jana Buchanan in Fayetteville, Tennessee to watch the Super Bowl game. Rodney Howard, Mr. Buchanan's half-brother, Richard Askins, James Battle, Shevonta Love, and Stephen Whitaker all planned to

watch the game at the Buchanan residence. Early in the afternoon, the partygoers were sitting in the house when [petitioner] and Angie Hill walked into the house. Ms. Hill is the sister of Mr. Buchanan and Mr. Howard. Petitioner walked across the living room and asked Mr. Whitaker to see him outside. Mr. Whitaker followed [petitioner] out of the house. Mr. Whitaker came back shortly thereafter, and [petitioner] left.

Mr. Buchanan was agitated that [petitioner] would walk into their house without acknowledging either him or his wife. Soon thereafter, [petitioner] walked back into the house, telling Mr. Buchanan that he had "disrespected" his family for the last time. [Petitioner] added that Mr. Buchanan was no longer welcome in his home. [Petitioner] told Mr. Buchanan, "I got you" before he left the residence.

At that point, most of the people at the party left to go home and take showers prior to the Super Bowl game. After the game started, Mrs. Buchanan informed Mr. Buchanan that his sister called to tell them that [petitioner] was beating her.

The two brothers left the house, along with the three other men, in Mr. Howard's red Cadillac with twenty-two inch rims. The men left unarmed. On the way to Ms. Hill's house, they spotted Ms. Hill and her truck on the side of Hedgemont Avenue. [Petitioner] was standing next to Ms. Hill's truck, talking to her.

When they got close to the scene, Mr. Howard threw the car in park and got out. Mr. Howard threw his hands up in the air, demanding to know what was going on. They all wanted to know what was going on with [petitioner] and Ms. Hill. Mr. Buchanan also exited the vehicle and went around towards [petitioner]. At that time, a shot was fired that hit Mr. Buchanan. Ms. Hill exclaimed, "I can't believe you shot my brother, Shawn!" Mr. Buchanan was placed back in the car and driven to the hospital where he later died from a gunshot wound to the upper torso.

A witness living nearby called 911 and reported the incident. Police were dispatched to the area and witnessed [petitioner] walking down Wilson Parkway, about 250 yards from the crime scene. [Petitioner] began to walk faster when he saw the police and was seen lobbing an object onto the top of a building. [Petitioner] was wearing a glove on his left hand and holding a glove in his right hand.

[Petitioner] was subsequently arrested. When the area around the building was searched, officers located a .38 caliber revolver, one spent casing, and one unspent casing.

During the investigation, police located an empty gun holster at the home of Ms. Hill and a fanny pack that held shells similar to those used in the shooting. Ms. Hill had not given [petitioner] permission to use her weapon. Forensic tests determined that the gun found near the scene fired the shot that killed Mr. Buchanan. Additionally, [petitioner]'s shirt indicated the presence of gunshot primer residue.

*State v. Shawn Simmons*, No. M2009-01362-CCA-R3-CD, 2010 WL 3719167, at *1-2 (Tenn. Crim. App. Sept. 23, 2010). Upon this evidence, the jury convicted petitioner of first degree murder. This court affirmed his conviction on direct appeal. *Id.* at *1.

Petitioner filed a pro se petition for post-conviction relief alleging that trial counsel[1] were ineffective for the following reasons: (1) replacing his original counsel;[2] (2) inadequate preparation and investigation; (3) failure to request a sequestered jury; (4) failure to file a motion to suppress; (5) failure to question a witness about petitioner's carrying a weapon prior to the shooting; (6) failure to make certain objections; (7) failure to supplement the record; and (8) failure to raise the issue of "publicity" on appeal. The post-conviction court appointed counsel, who filed an amended petition that incorporated the pro se petition. The amended petition further alleged that trial counsel's performance was ineffective for failing to fully investigate all possible defenses, that petitioner did not receive full discovery, and that the State failed to disclose evidence favorable to petitioner and mentioned a prior charge at trial that had been dismissed at the preliminary hearing. The post-conviction court held a hearing on the petition March 20, 2012, at which the parties presented the following evidence:

Petitioner testified that trial counsel began representing him after his preliminary hearing. He initially was represented by preliminary counsel; however, she was removed from his case and replaced with trial counsel one. Petitioner stated that he was happy with

---

[1] Petitioner had three attorneys from the District Public Defender's Office who represented him at trial. For clarity, we will refer to them as "trial counsel one," "trial counsel two," and "trial counsel three" individually. Collectively, we will refer to them as "trial counsel." Petitioner was represented by another attorney from that office during his preliminary hearing. We will refer to that attorney as "preliminary counsel."

[2] Petitioner apparently preferred preliminary counsel, who represented him in General Sessions court. In his petition for post-conviction relief, he complains about her being replaced with subsequent counsel.

preliminary counsel's performance. He did not know why preliminary counsel was replaced with trial counsel one.

Petitioner further testified that trial counsel two was added to petitioner's case two or three days before trial, and trial counsel three was added approximately six days before trial. Petitioner stated that trial counsel two was inadequate in his defense because he did not meet with petitioner until three or four days before trial. Petitioner felt that was not enough time to prepare for a first degree murder case. He stated that trial counsel two was not fully aware of what transpired during the earlier stages of his case. Petitioner said that he only met with trial counsel two once for about three minutes and that he and trial counsel two did not discuss trial strategy at this meeting. Petitioner testified that trial counsel two was only present for the first day of trial and part of the second day. Petitioner said he did not see him again until deliberation.

Petitioner stated that trial counsel three was present during his meeting with trial counsel two, and according to petitioner, trial counsel two was more interested in what trial counsel three was saying than what petitioner was saying. In addition, trial counsel three was present during a meeting between petitioner and preliminary counsel. Petitioner met with trial counsel three a third time for approximately ten minutes.

Petitioner testified that on the first day of his trial, he sat next to trial counsel two. He said that he asked his trial counsel to object on several occasions because "[s]ome of the things that were said in trial . . . contradicted . . . the things that were said in a previous hearing." He further said, "Certain witnesses said certain things that could have been objected to if [trial counsel two] would have took [sic] the initiative to object." Petitioner stated that trial counsel two told him that he was not familiar with what had occurred at the preliminary hearing. Petitioner maintained that trial counsel two should have made the requested objections nonetheless. Petitioner further said,

> All of the lawyers should have been on the same page and been aware of everything all at one time. That way, if I wanted an objection or asked for an objection, one would know what was going on, instead of just saying, I don't know nothing [sic] about that, so I am going to let that go. They should have been on one accord.

Petitioner explained that he was also dissatisfied with trial counsel one's failure to ask the court to sequester the jury after petitioner had asked him to do so. Petitioner said trial counsel one told him that he would request a sequestered jury, and petitioner was under the impression the jury had been sequestered. He discovered that the court had not sequestered the jury when the trial judge instructed the jury not to discuss the case when they went home.

Petitioner testified that on the third day of his trial, he became aware that four jurors had read a newspaper article about his case. Two of those jurors were dismissed, and the remaining two were allowed to remain on the jury panel because they had only read the headline of the article. Petitioner stated that he asked trial counsel three if they could question the other jurors to determine whether these four jurors had discussed the article with them, but he did not get a response. He recalled that trial counsel one only asked the jurors what they read and that the court did the majority of the questioning. Petitioner said he felt that he did not receive a fair trial because the two jurors who remained on the jury panel might have contaminated the other jurors with what they had read in the newspaper. Petitioner also felt that trial counsel should have conducted a more in-depth questioning of the jurors regarding any possible contamination.

Petitioner stated that trial counsel were ineffective for failing to file a motion to suppress his statements to police. He stated that an officer questioned him in a holding cell on the night of his arrest and that he asked the officer for a lawyer during the questioning. He stated that the officer left the cell, and another officer came in and continued to question him. Petitioner said he told the second officer that he wanted a lawyer present, and the second officer left. Petitioner felt that his statements should have been suppressed because he invoked his right to counsel, yet the officers continued to question him. Petitioner testified that he, trial counsel one, and two other individuals watched a recording of his interview. Petitioner recalled that the officers brought up his past during the interview, which was "irrelevant to what [he] was arrested for." Petitioner stated that if trial counsel had filed a motion to suppress his statement, the "defense strategy may have been different."

Petitioner stated that he took issue with Lieutenant Massey's testimony at trial that petitioner signed a waiver of rights form. Petitioner denied signing the written form and said Lieutenant Massey only orally advised him of his rights. Petitioner said he went through the discovery materials with trial counsel one, and the discovery did not include a written waiver of rights form.

Next, petitioner testified that trial counsel were ineffective for failing to question a witness about petitioner's carrying a weapon on different occasions. Petitioner recalled that there was evidence presented at trial that he had stolen the gun used in the shooting. He stated that there was a witness available who would have testified that petitioner did not steal the gun. Petitioner said he had carried the gun on "numerous occasions," and he did not procure it to commit the murder in this case. Petitioner testified that he asked trial counsel one to speak with this potential witness.

Petitioner further testified that trial counsel were ineffective for failing to object when the State used his previous charge for theft of a weapon, which had been dismissed, during

his trial. Petitioner recalled that when he asked trial counsel one to object to the State's mentioning this charge, trial counsel one informed him that it did not really matter because the State mentioned it in closing arguments. Petitioner said he felt that it mattered because he was not on trial for that charge. He further said,

> Well, in closing arguments, you are directing your last words to the jury. If your last words are bringing up a charge that I am not on charge [sic] for, then that sways their mind to what has been said already to what is being used against me now that was in a lower court.

Petitioner recalled that the State brought up the theft charge both during trial and in closing arguments, and his trial counsel never objected. Petitioner said that the State also mentioned that petitioner had stolen the gun to commit the murder, and trial counsel did not object.

According to petitioner, the State did not disclose all of the witnesses whom the State intended to use at trial. Petitioner recalled that Eddie Nance, a State witness, was in the courtroom during jury selection. Petitioner said he knew Mr. Nance because they were in the same line of work. Petitioner asked the investigator for his case and trial counsel one why Mr. Nance was in the courtroom. Petitioner said neither man knew why Mr. Nance was in the courtroom, but they told petitioner that he was not there for his case. Petitioner stated that Mr. Nance testified for the State on the third day of his trial. Petitioner recalled Mr. Nance's being present in the courtroom during the testimony of Rodney Howard. Petitioner believed that Mr. Nance was called as a witness because he had mentioned Mr. Nance's name when the investigators questioned him. Trial counsel did not object to the State's calling Mr. Nance as a witness or to any of Mr. Nance's testimony. Petitioner stated that trial counsel were ineffective for failure to fully investigate the case, specifically whether Mr. Nance was going to testify at trial.

Petitioner stated that he discussed having his friend, Jamie White, as a witness at trial.[3] Petitioner spoke with Mr. White on the telephone the day of the shooting in this case. Petitioner recounted that he was threatened numerous times before the actual incident and that he wanted to leave town. Petitioner called Mr. White and asked Mr. White to come get him. Petitioner said he told trial counsel one and trial counsel three about Mr. White. He

---

[3] Petitioner addressed this issue for the first time at the evidentiary hearing. He failed to include it in his pro se petition or the amended petition filed by counsel. "A post-conviction petitioner may not raise grounds on appeal that were not alleged in the petition for post-conviction relief." *Patrick Thurmond v. State*, No. M2005-00214-CCA-R3-PC, 2006 WL 680924, at *7 (Tenn. Crim. App. Mar. 15, 2006); *Long v. State*, 510 S.W.2d 83, 85 (Tenn. Crim. App. 1974). However, because the post-conviction court erroneously received evidence with regard to the issue and addressed it in the order denying relief, we will consider it in this appeal.

stated that they investigated Mr. White and told petitioner that Mr. White was incarcerated at the Maury County jail. Petitioner called the jail and Mr. White's mother to verify, and he discovered that Mr. White was not incarcerated.

Petitioner testified that trial counsel did not supplement the record for his direct appeal with transcripts of the preliminary hearing. He recalled having numerous conversations and writing many letters to trial counsel one requesting that he supplement the record with the transcripts. According to petitioner, the testimony at the trial contradicted the testimony during the preliminary hearing. Petitioner stated that this conflicting evidence was not included in his appeal, and because of this, the facts stated in the opinion on direct appeal were incorrect. Petitioner further stated that trial counsel were ineffective for failing to file a petition to rehear based on the allegedly incorrect statement of facts in the opinion on direct appeal. Petitioner said trial counsel one advised him that the issue could be pursued in a petition for post-conviction relief; however, petitioner felt that the issue was appropriate for a petition to rehear.

Petitioner further testified that trial counsel were ineffective for failing to include the "publicity issues" on appeal. He explained that trial counsel asked the trial court to declare a mistrial based on the jurors' reading the article, and the trial court denied the request. Petitioner said that trial counsel one told him that he would raise the issue of the trial court's denial of the motion for mistrial on appeal, but trial counsel one only included the issue in the motion for new trial and did not include it in his appellate brief.

Petitioner stated that after he read the opinion from his direct appeal, he asked trial counsel one to file a motion for an extraordinary appeal. He said that trial counsel one did not respond. Petitioner later received a letter from trial counsel one in which trial counsel one informed petitioner that he was no longer representing him and that petitioner could present the issues that he had in a petition for post-conviction relief.

Petitioner testified that he discussed the jury instructions with trial counsel one. Petitioner asked trial counsel one to ask the court for a "curative instruction on intent, premeditation, and deliberation." He explained that he felt such an instruction was necessary because the instructions would have shown that the "elements didn't fit around the incident that took place." He said that the murder was a "spur of the moment action" that was not planned or premeditated. Petitioner stated that if the jury knew what the elements meant, they would have acquitted him or convicted him of a lesser-included offense.

On cross-examination, petitioner agreed that trial counsel one began representing him after his case was bound over to the grand jury. He further agreed that he received a letter advising him that his preliminary counsel would not represent him on the circuit court level

and would be replaced with trial counsel. Petitioner said that trial counsel one was the only attorney who came to visit him in jail and that he met with his other attorneys at the courthouse.

Petitioner further agreed that the trial judge admonished the jury not to read the newspapers. He said when trial counsel one discovered that four jurors "had some contact" with the newspaper, trial counsel one immediately brought it to the attention of the trial court, and the jurors were questioned. Two of the jurors informed the court that they read the headline and upon realizing that it concerned petitioner's case, they did not read the article. The other two jurors admitted reading the article, and the judge excused them from the jury. After denying the motion for a mistrial, the trial court again admonished the jury not to read anything regarding petitioner's case.

Petitioner acknowledged that his statement, which he wanted trial counsel to suppress, was consistent with his theory of self-defense. His statement recounted how a vehicle approached him, and several people exited the vehicle, causing him to fear for his life. However, petitioner maintained that the statement should not have been admitted because it contained prejudicial information about his past.

Petitioner stated that although he and trial counsel one met and went over the discovery, he had never seen the State's supplemental proposed witness list, which was filed on March 10, 2009, until the post-conviction hearing. Eddie Nance was the first name on the supplemental proposed witness list. Likewise, petitioner said he did not see the trial subpoena for Mr. Nance until the post-conviction hearing. Petitioner admitted, however, that during jury selection, he told trial counsel about his altercation with Mr. Nance that occurred before the shooting.

When asked if he was faulting his trial counsel "for not telling the jury that [he was] in the habit of carrying a .38-caliber handgun," petitioner answered that trial counsel should have done so to show the jury that he did not procure a weapon to shoot the victim. He said this evidence would have altered the jury's way of thinking. Petitioner recalled that his girlfriend testified at trial that the weapon petitioner used had been taken the day of the shooting, but he stated that she testified in that regard because she was unaware that petitioner had the gun. He explained that his girlfriend did not "always know what particular time [petitioner] . . . got [the gun], but if it [was] not there, she [knew] who [had] it."

Petitioner stated that he and trial counsel one discussed petitioner's trying to leave town before the shooting happened and petitioner's telephone conversations with Jamie White. Petitioner was not aware that Mr. White had an extensive criminal record but said they had previously been incarcerated together in the Giles County jail. Petitioner agreed that

Mr. White was not mentioned in his pro se petition for post-conviction relief or the first amended petition.

Petitioner stated that he never informed the trial judge that he was having a problem with trial counsel or that he wanted Mr. White to testify. Petitioner reviewed the jury instructions from his case and agreed that the trial judge instructed the jury regarding the definitions for premeditation, deliberation, and intent. Petitioner recalled that trial counsel one requested a special jury instruction on self-defense, which the trial court granted.

Trial counsel one testified that he was the lead trial counsel for petitioner's case, and trial counsel two and trial counsel three assisted him. He stated that when he was assigned to petitioner's case, he consulted with preliminary counsel. He and preliminary counsel had several conversations about the facts of the case. Trial counsel one did not dispute that petitioner was present during one of his meetings with preliminary counsel. Trial counsel recalled meeting with petitioner at least five or six times. Two or three of the meetings occurred at the jail, and the remaining meetings were at the courthouse.

Trial counsel one stated that trial counsel two had not been with the public defender's office for very long before being assigned to assist with petitioner's case. Trial counsel one stated that trial counsel two's duties were to observe the trial and "cross-examine some witnesses to get his name in the technical record, or to get his name in the transcript for purposes of the record." Trial counsel one said that he was the attorney who was most responsible for the trial strategy; however, he discussed what trial counsel were going to do at trial and the expected testimony with trial counsel two and trial counsel three.

Regarding sequestration of the jury, trial counsel one testified that he spoke with investigators and coworkers in his office who lived in the area and that he did not think that there was "sufficient publicity, knowledge, or any type of passion in the community that would cause a bias by either selecting a jury from this county or from sequestering the jury." He stated that if he had learned that many people had known of the case, had heard about the case, had discussed the case with others, or had reached an opinion about the case, he would have asked the trial court to sequester the jury. Trial counsel one denied that he "point blank" told petitioner that he would ask to sequester the jury.

Trial counsel one stated that he learned four jurors had read a newspaper article regarding petitioner's case. Trial counsel one notified the judge about the issue, questioned the four jurors about their reading the newspaper, and asked the court to declare a mistrial. Trial counsel one did not question the remaining jurors, but the trial judge did. He stated that in hindsight, he would have asked the court to sequester the jury.

Trial counsel one explained that he did not file a motion to suppress petitioner's statement because he felt that the statement was self-serving. He further explained that the statement verified petitioner's claim of self-defense because petitioner stated that he was jumped by a number of people and fired the shot in self-defense. Trial counsel one was aware of petitioner's prior criminal history and said that if petitioner testified, much of his criminal history would be admitted at trial. He felt that petitioner's statement was "a way of getting [petitioner's] testimony in front of the jury without having the State sit and read his prior conviction to him."

Trial counsel one testified that he spoke with petitioner about Angie Hill's testifying that petitioner carried a weapon on numerous occasions. Trial counsel one stated that he did not want evidence that petitioner frequently went armed presented to the jury. Petitioner was charged with felony possession of a handgun; however, that charge was dismissed at the general sessions level. Trial counsel one recalled the State's mentioning a theft of a weapon charge. He explained that he did not object to the prosecutor doing so because one of the defense witnesses had testified that petitioner took the gun without permission the night of the shooting. He further explained that he did not think "the [prosecutor] made the statement with regard to . . . theft charges. I think the statement was made about the taking of the weapon."

Trial counsel one testified that Mr. Nance was not on the original witness list, but the State supplemented its witness list and added him. He said that he "probably" did not speak to petitioner about Mr. Nance's testifying because his conversations with petitioner involved the original proposed witness list submitted by the State. He stated that he knew of Mr. Nance through petitioner's girlfriend, and he did not recall petitioner's mentioning Mr. Nance during his interview with police. According to trial counsel one, Mr. Nance and several other witnesses remained in the courtroom during jury selection because he did not invoke the rule of witness sequestration until after jury selection.[4] Trial counsel one said that he personally interviewed petitioner and petitioner's girlfriend before trial. Preliminary counsel and investigators interviewed other witnesses and gave the information to trial counsel one.

Trial counsel one recalled that petitioner sent him at least one letter asking him to supplement the record on appeal with a transcript of the preliminary hearing. Trial counsel

---

[4] It was not improper for the witnesses to remain in the courtroom until jury selection was completed. Tennessee Rule of Evidence 615 states, "At the request of a party the court shall order witnesses, including rebuttal witnesses, excluded at trial or other adjudicatory hearing. In the court's discretion, the requested sequestration may be effective before voir dire, but in any event shall be effective before opening statements."

one declined to supplement the record with the transcript because he felt that it would not add anything to the appeal. Regarding his not raising the "publicity issue" on appeal, trial counsel one explained that he likely told petitioner that he would raise the issue on appeal because he was "ill about the jurors reading the paper" and because the trial judge denied his motion for a mistrial. However, trial counsel one decided not to include the "publicity issue" on appeal because after researching the issue, he felt "the action taken by the trial judge and the dismissal of the jurors was adequate, and that issue would have been frivolous or without merit."

Trial counsel one did not recall petitioner's asking him to file a petition to rehear. He read the opinion from petitioner's direct appeal and stated that he did not feel like he "need[ed] to file anything to get the language straight" because the changes would not change the opinion of the Court of Criminal Appeals.

Trial counsel one recalled discussing special jury instructions with petitioner. He said that the defense team's main concern was having the court instruct the jury on self-defense. Trial counsel one stated that he "made the decision to ride two horse[s]. One was going to be self-defense; and if you don't believe the self-defense . . . then would you consider second-degree murder or voluntary manslaughter." Nonetheless, he felt petitioner received a fair trial.

On cross-examination, trial counsel one agreed that a downside to sequestering a jury was that some members of the jury may be disgruntled at the fact that they are kept away from their homes and families. He further agreed that if he could keep a jury "free," it would keep them happier. Trial counsel one stated that the trial judge thoroughly admonished the jurors in petitioner's case regarding what they were and were not allowed to do.

On redirect examination, trial counsel one testified that he only met with petitioner approximately five times, but there were many more meetings and investigations held outside of petitioner's presence. He stated that petitioner was cooperative during the meetings and was "more than willing and very pleasant to speak with about the facts and what happened." Trial counsel one felt that he had adequately met with petitioner, understood the case, and understood the witnesses' testimony. He said that there was no question that petitioner killed the victim, and the only issue was whether it was self-defense, second degree murder, or voluntary manslaughter. He also said that he felt the defense team was fully prepared, that there were no surprises at trial, and that the witnesses testified as expected.

Preliminary counsel testified that she represented petitioner at the general sessions level, "probably a little bit past arraignment." She stated that petitioner's charge of being a felon in possession of a handgun was dismissed the day of his preliminary hearing, and the

rest of the charges were bound over to the grand jury. She estimated that she met with petitioner more than five times before his case was set for trial. She recalled that her meetings with petitioner at the courthouse would last for approximately twenty minutes and that she would spend more than an hour with petitioner when they met at the jail.

Preliminary counsel stated that she was removed from the case when it was set for trial. She conferred with trial counsel about the case and provided them with the information she had collected while preparing for the preliminary hearing. Part of her preparation for the preliminary hearing was interviewing petitioner's girlfriend and family members.

On cross-examination, preliminary counsel testified that the trial court appointed her entire office to represent petitioner, and all members of her office worked on the case. She stated that she never assured petitioner that she would be his attorney at trial.

Trial counsel two testified that he began representing petitioner a few weeks before trial. He met with petitioner once or twice, and trial counsel one and trial counsel three were present during the meetings. He stated that he was present for the entire first day of trial, none of the second day, and part of the third day. During the first day of trial, petitioner sat next to trial counsel two and was able to ask him questions. Trial counsel two stated that his primary role during petitioner's trial was to assist petitioner's other counsel and gain experience defending a murder case.

Trial counsel two stated that he did not recall telling petitioner that he was not familiar with any part of petitioner's case. Trial counsel two said that he spent several hours familiarizing himself with the case and that he spoke with trial counsel one and three about the case. He also spoke with preliminary counsel about the case.

Trial counsel two was involved in the voir dire of the jury, but he did not recall petitioner's asking him to sequester the jury. Trial counsel two stated that he felt he was competent to be the third chair in petitioner's trial and that he was adequately prepared. On cross-examination, trial counsel two testified that he cross-examined at least one witness during the trial.

Trial counsel three testified that he was assigned to handle petitioner's case, but he could not recall how far before trial he was assigned. He stated that preliminary counsel was assigned to handle the case during the preliminary hearing, and he was sure that he spoke with her in preparation for trial. Trial counsel three did not interview any witnesses, but he met with petitioner before trial. He stated that trial counsel one was the lead attorney, and he relied on what trial counsel one and preliminary counsel knew about the case. Trial counsel three stated that trial counsel two was not present during the entire trial. He

-12-

explained that trial counsel two's role was to voir dire jurors to determine whether they should be excused for cause and to speak with witnesses.

Trial counsel three did not recall if he went over the discovery or discussed jury instructions with petitioner. He also did not recall where petitioner sat during trial, but he said that if he was sitting next to petitioner and petitioner had questions, he would have answered them. Trial counsel three was not involved in petitioner's appeal and did not know anything about it.

Jamie Lamont White, Jr. testified that he had been petitioner's friend since they were around fourteen years old. He recalled speaking with petitioner the day of the shooting. He said petitioner asked him "to get out of a situation that occurred between [petitioner] and his girlfriend . . . ." Petitioner told Mr. White that he had to "get away." In turn, Mr. White told petitioner to walk away from the house, and he would go get him. While Mr. White was on the way to pick up petitioner, he received a call from a friend telling him about the shooting.

Mr. White stated that he spoke with someone at trial counsel's office. He told that person that he was not present at the scene, but he "could shed a little light on it[.]" Mr. White said that he was willing to testify at petitioner's trial and that one of petitioner's attorneys called him, but he missed their call because he was at work. He returned the call, but he was unable to get in touch with anyone. Mr. White said that he called again after a few days, but he still did not get an answer or a call back. He stated that he assumed that they did not need him to be witness and "just left it alone."

On cross-examination, Mr. White testified that he was related to one of petitioner's co-defendants in an unrelated case. He stated that he did not pursue being a witness in petitioner's case because he had his own case going on and was on parole. He explained, "I didn't know if my testimony would even be credible or hurt his case at the time, so I really wasn't excited about it." Mr. White admitted to having several convictions for drug-related offenses.

After hearing the evidence, the post-conviction court took the matter under advisement. On April 3, 2013, the post-conviction court filed a "Memorandum Order" finding that petitioner failed to show that trial counsel's performance was deficient or that petitioner was prejudiced by any alleged deficiencies. Accordingly, the post-conviction court denied relief. From that denial of post-conviction relief petitioner now appeals.

-13-

## II. Analysis

On appeal, petitioner alleges several instances of ineffective assistance of counsel.[5] To obtain relief in a post-conviction proceeding, a petitioner must demonstrate that his or her "conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2012). A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2012); *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010) (citing *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009)). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Lane*, 316 S.W.3d at 562 (quoting *Grindstaff*, 297 S.W.3d at 216).

Appellate courts do not reassess the trial court's determination of the credibility of witnesses. *Dellinger v. State*, 279 S.W.3d 282, 292 (Tenn. 2009) (citing *R.D.S. v. State*, 245 S.W.3d 356, 362 (Tenn. 2008)). Questions regarding the credibility of witnesses are matters entrusted to the trial judge as the trier of fact. *Dellinger*, 279 S.W.3d at 292 (citing *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). The post-conviction court's findings of fact are conclusive on appeal unless the preponderance of the evidence is otherwise. *Rigger v. State*, 341 S.W.3d 299, 307 (Tenn. Crim. App. 2010) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997)). However, conclusions of law receive no presumption of correctness on appeal. *Rigger*, 341 S.W.3d at 307 (citing *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001)). As a mixed question of law and fact, this court's review of petitioner's ineffective assistance of counsel claims is de novo with no presumption of correctness. *Dellinger*, 279 S.W.3d at 294 (citing *Finch v. State*, 226 S.W.3d 307, 315 (Tenn. 2007)).

The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and article I, section 9 of the Tennessee Constitution require that a criminal defendant receive effective assistance of counsel. *Cauthern v. State*, 145 S.W.3d 571, 598 (Tenn. 2004) (citing *Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1975)). The constitutional right to counsel attaches when adversarial judicial proceedings are initiated against the defendant. *State v. Mitchell*, 593 S.W.2d 280, 286 (Tenn. 1980). "Initiation" is construed as issuance of an arrest warrant, the time of the preliminary hearing in cases where an arrest warrant is not first issued, or by indictment or presentment issued by a grand jury. *Id.* at 286.

---

[5] Petitioner presented many issues in his petition for post-conviction relief that were not included or argued in his appellate brief. We treat any issues not included in appellant's brief as waived. *See* Tenn. R. App. P. 27(a)(7); Tenn. R. Crim. App. 10(b).

To prevail on his claim of ineffective assistance of counsel, petitioner must demonstrate both that his lawyer's performance was deficient and that the deficiency prejudiced the defense. *Finch*, 226 S.W.3d at 315; *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Baxter*, 523 S.W.2d at 936)). To prove that counsel's performance was deficient, petitioner must establish that his attorney's conduct fell below an objective standard of "'reasonableness under prevailing professional norms.'" *Finch*, 226 S.W.3d at 315 (quoting *Strickland*, 466 U.S. at 688). As our supreme court has previously held:

> "[T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence . . . . Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations."

*Baxter*, 523 S.W.2d at 934-35 (quoting *Beasley v. United States*, 491 F.2d 687, 696 (6th Cir. 1974)). On appellate review of trial counsel's performance, this court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689); *see Finch*, 226 S.W.3d at 316.

To establish that petitioner suffered prejudice as a result of counsel's deficient performance, petitioner "'must establish a reasonable probability that but for counsel's errors the result of the proceeding would have been different.'" *Finch*, 226 S.W.3d at 316 (quoting *Vaughn*, 202 S.W.3d at 116). "A 'reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Vaughn*, 202 S.W.3d at 116 (quoting *Strickland*, 466 U.S. at 694); *see Finch*, 226 S.W.3d at 316. As such, petitioner must establish that his attorney's deficient performance was of such magnitude that he was deprived of a fair trial and the reliability of the outcome was called into question. *Vaughn*, 202 S.W.3d at 116 (citing *Strickland*, 466 U.S. at 694; *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999)).

Petitioner must establish both deficient performance and prejudice therefrom to be entitled to post-conviction relief. *Vaughn*, 202 S.W.3d at 116*; Howell*, 185 S.W.3d at 326. It follows that if this court holds that either prong is not met, we are not compelled to consider the other prong. *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004).

## A. Failure to Call a Witness

Petitioner contends that trial counsel were ineffective for failing to call Jamie White as a defense witness. According to petitioner, Mr. White's testimony would have bolstered petitioner's claim of self-defense. Petitioner presented Mr. White's testimony at the post-conviction hearing. Mr. White stated that someone from petitioner's defense team contacted him about being a witness, but after no one followed up with him, he "left it alone." Petitioner did not question trial counsel about the decision not to use Mr. White as a witness. However, Mr. White's testimony showed that he had a history of criminal convictions, and by his own admission, he was not likely a credible witness because he was dealing with his own criminal case at the time of petitioner's trial. Mr. White was not present at the scene of the shooting, and the only evidence he offered regarding petitioner's acting in self-defense was that petitioner told him that he had been in an altercation and wanted to "get away." Information regarding the altercation and petitioner's claim of self-defense was included in his statement to authorities. Thus, there is no reasonable probability that Mr. White's testimony would have changed the outcome of the case. Petitioner has failed to show that trial counsel were ineffective for failing to present the questionable testimony of Mr. White or that he was prejudiced by any alleged deficiency. This issue is without merit.

## B. Replacement of Counsel

Petitioner argues that he received ineffective assistance because preliminary counsel was replaced with "attorneys who rarely met with petitioner, and if they did, it was for a short period of time."

The evidence at the post-conviction hearing showed that preliminary counsel was assigned to represent petitioner at the general sessions level only, and trial counsel one was the lead attorney on petitioner's case at the circuit court level. Trial counsel two and trial counsel three assisted trial counsel one with petitioner's case. All three attorneys testified that they met with preliminary counsel and received all of the information that she had regarding petitioner's case. They also testified that they met with petitioner multiple times to discuss the case. Trial counsel one described petitioner as cooperative and stated that petitioner assisted trial counsel with their defense. As the post-conviction court noted, trial counsel were adequately prepared and consulted with preliminary counsel while representing petitioner. It is clear that petitioner would have preferred to have been represented by preliminary counsel at trial. However, his preference for one attorney does not per se render that counsel's replacement ineffective. Moreover, while trial counsel two was assigned later in the case, he was not lead counsel and was only there to assist trial counsel one. Thus, his late assignment to the case did not prejudice petitioner. Petitioner has not shown that trial

counsel were deficient for replacing preliminary counsel or that their replacing preliminary counsel prejudiced him.

## C. Sequestration of Jury

Next, petitioner challenges trial counsel's failure to request sequestration of the jury. Trial counsel testified that he discussed sequestering the jury with petitioner but decided that it was not necessary. He further stated that sequestering a jury can have a negative effect, including irritating the jury by separating them from their families and everyday lives. The post-conviction court agreed with trial counsel one's testimony that there was no need to sequester the jury and found that petitioner failed to show that he was prejudiced by trial counsel's failure to move to sequester the jury. Petitioner has not shown that trial counsel's tactical decision to not seek sequestration of the jury was unreasonable or deficient.

Petitioner further argues that he was prejudiced by not having a sequestered jury because several jurors read a newspaper article regarding the trial. The post-conviction court found that petitioner did not present adequate proof that a mistrial was warranted based on the jurors' reading the newspaper and agreed with trial counsel's testimony that it would have been frivolous to pursue the issue on appeal. When trial counsel one discovered that some jurors had read the newspaper, he brought it the attention of the court and moved for a mistrial. Upon questioning from the court, it was determined that two jurors read the article and that two only read the headline. The two jurors who read the article were dismissed from the jury. Petitioner did not present any proof that the two jurors who read only the headline of the article were tainted or that they contaminated the remaining jurors. Thus, petitioner has failed to show deficient performance and prejudice regarding the jury's not being sequestered. This issue is without merit.

## D. Failure to Object

Petitioner asserts that trial counsel were deficient for failing to object to the prosecutor's "using charges that were dismissed at the preliminary hearing against [petitioner] at trial." Specifically, he complains that there was testimony that he stole the murder weapon and claims that this evidence was improper because the theft of a weapon charge was dismissed. As noted by the post-conviction court, the evidence that petitioner took the murder weapon without permission from where his girlfriend kept it was highly probative of petitioner's intent and premeditation. Further, trial counsel one testified that he made a tactical decision not to object to the testimony regarding petitioner's stealing the gun used to shoot the victim because petitioner's girlfriend, a defense witness, was the person who offered the testimony. This court will not "second guess" tactical and strategical choices pertaining to defense matters. *Cooper v. State*, 849 S.W.2d 744, 747 (Tenn. 1993)

-17-

(citing *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982)). Petitioner has failed to show trial counsel was deficient in this regard, and he is not entitled to relief.

## E. Failure to File a Motion to Suppress

Finally, petitioner argues that trial counsel were deficient for failing to file a motion to suppress his statement to law enforcement officers. The post-conviction court determined that petitioner was given his *Miranda*[6] rights and that once petitioner made an unequivocal request for an attorney, the police stopped questioning him. The court further noted that there was no evidence that petitioner was intimidated, coerced, threatened, or otherwise induced into making a statement. After reviewing the video of the interrogation, we agree with the post-conviction court's assessment. Moreover, trial counsel one testified that it was his strategy to have the statement admitted as a way to get petitioner's theory of self-defense before the jury without petitioner's testifying and being subjected to a rigorous cross-examination. Again, we will not second guess this reasonable strategy. *Cooper*, 849 S.W.2d at 747 (citing *Hellard*, 629 S.W.2d at 9). Petitioner has not shown that trial counsel were deficient or that any alleged deficiency prejudiced him. Thus, he is not entitled to relief on this issue.

## CONCLUSION

Based on our review of the record and foregoing authorities, we discern no error and affirm the judgment of the post-conviction court.

_____
ROGER A. PAGE, JUDGE

---

[6] *See Miranda v. Arizona*, 384 U.S. 436 (1966).